FILED
2012 Mar-05  PM 01:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MICHELLE HAMILTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:10-cv-3599-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Michelle Hamilton ("Plaintiff") brings this action pursuant to

Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking

review of the final adverse decision of the Commissioner of the Social Security

Administration ("SSA").  This court finds that the Administrative Law Judge's

("ALJ") decision - which has become the decision of the Commissioner - is

supported by substantial evidence.  Therefore, for the reasons elaborated herein,

the Court will **AFFIRM** the decision denying benefits.

### I. Procedural History

Plaintiff filed her application for Title II disability insurance benefits on

May 26, 2007, alleging a disability onset date of May 1, 2006, from "depression,

back problem, fibromyalgia, obesity, and heart problem."  (R. 75, 91).  Plaintiff's

disability report alleged also that she is unable to work because

> [t]here are days I cannot get out of bed due to fibromyalgia.  Also, my
> back hurts all the time.  I have to lay down so the pain can ease up.  I
> cannot walk long distances due to the back pain.  My depression
> makes me feel like I am being smothered.  I stay fatigued all the time.
> Also, its hard for me to get around due to my right knee.  I have to do
> my house work at my own pace.

(R. 91).  After the SSA denied her application on August 3, 2007, (R. 56), Plaintiff

requested a hearing on October 3, 2007, (R. 62), and received one on December

12, 2008, (R. 24).  At the time of the hearing, Plaintiff was 41 years old and had a

high school GED.  (R. 27-28).  Her past relevant work included medium and

semiskilled work as a nurse aid and home attendant, light and unskilled work as a

cafeteria attendant, and light and semiskilled work as a substitute teacher.  (R. 38).

Plaintiff has not engaged in substantial gainful activity since May 1, 2006.  (R.

91).

The ALJ denied Plaintiff's claims on March 30, 2009, (R. 11), which

became the final decision of the Commissioner when the Appeals Council refused

to grant review on November 29, 2010, (R. 1).  Plaintiff then filed this action

pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Plaintiff alleges disability because of pain, he must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, <u>neither requires objective proof of the pain
> itself</u>. Thus under both the regulations and the first (objectively
> identifiable condition) and third (reasonably expected to cause pain
> alleged) parts of the *Hand* standard <u>a claimant who can show that his
> condition could reasonably be expected to give rise to the pain he
> alleges has established a claim of disability and is not required to
> produce additional, objective proof of the pain itself</u>. *See* 20 CFR §§
> 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical

information omitted) (emphasis added).  Moreover, "[a] claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

a claimant testifies to disabling pain and satisfies the three part pain standard, the

ALJ must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, he

must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for
> refusing to credit a claimant's subjective pain testimony, then the [ALJ], as
> a matter of law, has accepted that testimony as true.  Implicit in this rule is
> the requirement that such articulation of reasons by the [ALJ] be supported
> by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if

the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability. *Id*.

## IV. The ALJ's Decision

In light of Plaintiff's contentions, the obvious starting point here is the ALJ's decision. In that respect, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset disability date, and therefore met Step One. (R. 13). Next, the ALJ acknowledged that Plaintiff's severe impairments of "morbid obesity with [Plaintiff] having undergone gastric surgery," fibromyalgia, depression, hypertension, lumbar spondylosis, and lumbar spinal stenosis met Step Two.[2] *Id*. The ALJ then proceeded to the next step and found that Plaintiff did not satisfy Step Three since Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 17). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) occasionally lifting and carrying ten

---

[2]The ALJ found also that Plaintiff has a "history of diabetes. However, this condition is controlled and was specifically noted, at the hearing, to not be a severe impairment." (R. 13).

> pounds and frequently less than 10 pounds, no concentrated exposure
> to cold, heat, humidity, no ladders, ropes, or scaffolding, and no work
> at unprotected heights and around dangerous, moving, unguarded,
> machinery.  Due to psychological limitations she should only have
> occasional contact with [ ] coworkers, supervisors, and the public.

(R. 18).  In light of Plaintiff's residual functional capacity ("RFC"), the ALJ held

that Plaintiff was "unable to perform any past relevant work."  (R. 21).

Consequently, the ALJ moved on to Step Five where he considered Plaintiff's age,

education, work experience, and RFC, and determined that "there are jobs that

exist in significant numbers in the national economy that [Plaintiff] can perform."

*Id*.  As a result, the ALJ answered Step Five in the negative, and determined that

Plaintiff is not disabled.  (R. 60); *see also McDaniel*, 800 F.2d at 1030.   It is this

finding that Plaintiff challenges in this action.

## V.  Analysis

The court turns now to Plaintiff's contentions that the ALJ committed

reversible error because he (1) failed to give substantial weight to Plaintiff's

treating physicians, Drs. Daniel Laeupple ("Dr. Laeupple") and Ahmad Shikh

("Dr. Shikh"), doc. 8 at 7, and (2) rejected Plaintiff's subjective complaints of

pain, doc. 8 at 11.  Based on its review of the record, the court disagrees with

Plaintiff that the ALJ committed reversible error.

*A.*   *The ALJ did not err by assigning "little weight" to Dr. Shikh's opinion and finding that Dr. Laeupple's opinion is "totally inconsistent with his notes/comments/ and with his GAF's."*

1.   Dr. Ahmad Shikh

Dr. Shikh initially evaluated Plaintiff's complaints of neck and lower back pain on December 13, 2007.  (R. 374-375).  During that visit, Plaintiff stated that the pain was (1) an "8.5 on the pain scale," (2) an "aching, throbbing, miserable, stabbing pain," and (3) aggravated by "neck/back motion, standing, lifting, bending, walking, coughing or sneezing, and twisting," and relieved by "rest (recumbency), laying down, heating pads."  (R. 374-75).  Dr. Shikh diagnosed Plaintiff with low back pain, neck pain, and facet syndrome, and prescribed Plaintiff Celebrex[3], Robaxin[4], Ultram[5], and weight loss since Plaintiff weighed 333 pounds.  (R. 375).

Two months later, on February 21, 2008, Dr. Shikh evaluated Plaintiff and noted that she was "doing okay today," that her daily living activities were "moderately limited," and that Plaintiff had not lost weight.  (R. 365).  Dr. Shikh

_____

[3]Celebrex is used to relieve pain caused by osteoarthritis.

[4]Robaxin is a muscle relaxant and pain reliever.

[5]Ultram is used to relieve moderate to moderately severe pain.

diagnosed Plaintiff with back and neck pain, facet syndrome, lumbrosacral spondylosis without myelopathy, and lumbar spinal stenosis. *Id*. The next month, on March 20, 2008, Plaintiff again reported to Dr. Shikh that she was "doing okay today." (R. 364). Dr. Shikh noted further that Plaintiff's condition remained unchanged. *Id*.

On April 14, 2008, Plaintiff reported to Dr. Shikh that an epidural steroid injection she received on March 21, 2008, worsened Plaintiff's pain. (R. 485, 489). Dr. Shikh increased Plaintiff's pain medication dosage, and noted that Plaintiff should consider repeating the epidural steroid injection. *Id*. On May 13, 2008, and June 10, 2008, Plaintiff reported to Dr. Shikh that her pain was a "7 on the pain scale today." (R. 487, 488). On June 10, 2008, Dr. Shikh discontinued Plaintiff's Neurontin[6], (R. 487), but restarted it on July 9, 2009, because Plaintiff complained that the pain was "rough" and that she could "tell a difference since stopping the Neurontin," (R. 486).

On September 4, 2008, Dr. Shikh evaluated Plaintiff and noted that "her back still hurts," (R. 495), and on September 8, 2008, Dr. Shikh again performed on Plaintiff an epidural steroid injection, (R. 497). On October 29, 2008, Dr. Shikh noted that Plaintiff "says she is doing better" and is "improving since [her]

---

[6]Neurontin is used to relieve the pain of postherpetic neuralgia.

last visit," and that Plaintiff lost 12 pounds since her gastric bypass surgery on May 27, 2008.  (R. 414, 494).  Plaintiff reported further that her pain was "improved as 7 on the pain scale" and that her daily living activities were moderately limited and improved.  *Id*.

On November 12, 2008, Dr. Shikh completed a Physical RFC Questionnaire and diagnosed Plaintiff with lumbar spondylosis, lumbar facet syndrome, and low back pain, and reported that her prognosis was poor.  (R. 508).  Dr. Shikh noted also that Plaintiff can stand or walk less than two hours in an eight hour work day, sit "about two hours" in an eight hour work day, but that she needed to walk every thirty minutes for ten minutes in an eight hour work day.  (R. 510).  Further, Dr. Shikh noted that Plaintiff could occasionally lift less than 10 pounds, and rarely lift 10 pounds.  *Id*.  Tellingly, Dr. Shikh noted also that "the earliest date that the description of symptoms and limitation in this questionnaire applies" is October 29, 2008, and that "[a]ll the evaluation was done depending on subjective evaluation."  (R. 512) (emphasis added).

The ALJ held that "[l]ittle weight is given to the medical source statement of Dr. Shikh.  This was noted by doctor as applying only to October 19, 2008[7] and

_____

[7]Dr. Sinkh noted that the symptoms and limitations in the questionnaire applied on October 29, 2008.  (R. 512).

[Plaintiff] is alleging an onset date of disability of May 1, 2006 so this assessment concerns only recent symptoms which are noted as subjective." (R. 21). The ALJ's decision to give Dr. Shikh's opinion "little weight" is supported by substantial evidence for several reasons. First, Dr. Shikh admitted that he based his evaluation solely on Plaintiff's subjective complaints, rather than on objective medical evidence. (R. 512). *See also* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence."). Second, Dr. Shikh's evaluation is only marginally helpful because he noted that it applied only from October 29, 2008, the date he last evaluated Plaintiff. In other words, his opinion has limited value to the determination of Plaintiff's alleged disability onset date of May 26, 2007. Third, any value of Dr. Shikh's evaluation is limited since Plaintiff had a date last insured of March 2009. (R. 75). Lastly, Dr. Shikh's RFC Questionnaire is inconsistent with his October 29, 2008, evaluation of Plaintiff, where Dr. Shikh noted that Plaintiff reported "doing better," increased activity, weight loss, and that her medication was effective and her pain had improved. (R. 494). For these reasons, the ALJ's decision to give Dr. Shikh's opinion "little weight" is supported by substantial evidence.

2.    Dr. Daniel Laeupple

Dr. Laeupple evaluated Plaintiff a total of four times, beginning on October 15, 2007, when Plaintiff reported that her "family doctor has me on Lexapro," that she has a three year history of "recurrent dysphoria, loss of interest, loss of energy, insomnia, appetite disturbance, poor concentration, hopelessness, and 'just want to cry,'" and "that she is unable to maintain gainful employment, not only due to her depression, but also outstanding health problems." (R. 355). Dr. Laeupple noted that Plaintiff (1) was "dysphoric with a mood-congruent affect," (2) had thought processing that was "clear and goal-directed," (3) had no suicidal or homicidal ideations, delusions, and hallucinations, and (4) possessed fair judgment with minimal insight. *Id*. Dr. Laeupple diagnosed Plaintiff with major depressive disorder and assigned her a global assessment of functioning "GAF"[8] score of 55, and noted further that she had "a recurrent history of dysphoric mood and underlying medical complications that interfere with her normal psychosocial functioning, including her ability to maintain gainful employment." (R. 356).

Two months later, on December 7, 2007, Dr. Laeupple again evaluated Plaintiff and noted that she was compliant with her medications, had less fatigue

---

[8]The American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> 34 (4th ed. 2000), presents the Global Assessment of Functioning ("GAF") Scales, which are widely used to score the severity of psychiatric illnesses.

and irritability, that her mood and affect were calm, and that she was without

psychosis or suicidal or homicidal thoughts.  (R. 358).  Dr. Laeupple assigned

Plaintiff a GAF score of 60.  *Id*.  Three months later, on March 3, 2008, Dr.

Lauepple evaluated Plaintiff and reported Plaintiff as compliant with her

medications and with no psychosis or suicidal or homicidal thoughts.  (R. 357).

Dr. Laeupple renewed Plaintiff's prescriptions and assigned her a GAF score of

70.  (R. 357).  Finally, Dr. Laeupple evaluated Plaintiff on June 16, 2008, and

noted Plaintiff as compliant with her medications, and added that Plaintiff had

dysphoria regarding recent gastric bypass surgery.  (R. 493).  Dr. Laeupple

assigned Plaintiff a GAF score of 65.  (R. 493).

On November 10, 2008, Dr. Laeupple completed a Mental RFC

Questionnaire on Plaintiff and reported that Plaintiff had a current GAF score of

65, was currently prescribed the antidepressant, Cymbalta, and described Plaintiff

as alert and oriented with respect to person, place and time.  (R. 503).  Dr.

Laeupple then outlined Plaintiff's symptoms and limitations.  First, Dr. Laeupple

indicated that Plaintiff had signs and symptoms of anhedonia, appetite disturbance

with weight change, decreased energy, feelings of guilt or worthlessness, mood

disturbance, difficulty thinking and concentrating, persistent disturbances of mood

or affect, emotional withdrawal or isolation, and sleep disturbance.  (R. 504).

Second, Dr. Laeupple found that Plaintiff had serious limitations in her ability to maintain regular attendance and be punctual, sustain an ordinary routine without supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, respond appropriately to changes in a routine setting, and deal with the stress of semiskilled or skilled work.  (R. 505-506).  Third, Dr. Laeupple found that Plaintiff was unable to meet competitive standards in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress.  (R. 505).  Finally, Dr. Laeupple rated Plaintiff's abilities as unlimited or very good in fourteen other categories.[9]  (R. 505-506).  Significantly, although the RFC Questionnaire asked Dr. Laeupple to explain limitations, if any, that fall in the "seriously limited, but

_____

[9]Dr. Laeupple rated Plaintiff's abilities as unlimited or very good in the following areas: remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for two hour segment; ask simple questions or request assistance; be aware of normal hazards and take appropriate precautions; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plan independently of others; interact appropriately with the general public; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar place; and use public transportation.  (R. 505-506).

not precluded," and "unable to meet competitive standards," categories, Dr. Laeupple provided no explanation. (R. 506). Further, Dr. Laeupple opined that Plaintiff did not have a low IQ or reduced intellectual functioning, that her psychiatric condition did not exacerbate her pain, but that her impairments would cause her to be absent from work more than four days per month. (R. 505-506).

On February 28, 2008, nine months before Dr. Lauepple completed the RFC Questionnaire, Dr. John Haney ("Dr. Haney") conducted a psychological evaluation on Plaintiff to determine Plaintiff's readiness for bariatric surgery. (R. 490). Dr. Haney noted that Plaintiff (1) had an intact memory because "she was able to remember three of three objects after a five minute delay and to provide considerable recent and remote information," (2) had average intelligence, and (3) denied "appetite disturbance, loss of energy, anhedonia, or crying spells. She also denied thoughts about death or any history of suicide attempt." (R. 490-491). Regarding Plaintiff's activities of daily living, Dr. Haney reported that Plaintiff "takes care of the home and the families' many pets," cooks, shops, and visits relatives. (R. 491). To complete the evaluation, Dr. Haney consulted with Dr. Laeupple and noted that

> [Plaintiff] has had difficulty with depression the past few years, but
> test results and input from [Plaintiff's] psychiatrist, Dr. Laeupple,
> indicated that she was emotionally stable. Via phone, 3-3-08, Dr.

Laeupple said that Mrs. Hamilton was ready and able to deal with the
stress and complications a major surgery could generate.  She had
never been psychotic or suicidal, he said.  She was described as a
reliable and cooperative patient, and he was able to recommend her
for a gastric bypass surgery.

(R. 491).  Dr. Haney found that Plaintiff "appeared emotionally stable and ready

for the lifestyle changes [gastric bypass] surgery may bring."  (R. 492).

Ultimately, as it relates to Dr. Laeupple's opinions, the ALJ held that

Little weight is given also to Dr. Laeupple's opinion in October 2007
that [Plaintiff] was unable to maintain gainful employment.  This
opinion was based on his initial assessment [which] was a restatement
of [Plaintiff's] opinion.  He relied quite heavily on [Plaintiff's]
subjective report of symptoms and limitations provided by [Plaintiff],
and seemed to uncritically accept as true most, if not all, of what
[Plaintiff] reported. [ ] In regard to the opinions of Dr. Laeupple in
November 2008 the undersigned noted that the medical source
statement is totally inconsistent with his notes/comments/and with his
GAFs.  This also conflicts with his input in Dr. Haney's examination
and evaluation of February 25, 2008.

(R. 20-21).  Based on the court's review of the record as a whole, the ALJ did not

err in assigning "little weight" to Dr. Laeupple's October 2007 opinion.  As the

ALJ noted, it was Dr. Laeupple's first time evaluating Plaintiff, and, as such, the

regulations do not require that the ALJ give Dr. Laeupple's opinion significant

weight.  *See* 20 C.F.R. § 404.1527(d)(2)(i) ("[T]he longer a treating source has

treated [a plaintiff] and the more times [a plaintiff] has been seen by a treating

source, the more weight we will give to the source's medical opinion.").

Likewise, the ALJ's decision that Dr. Laeupple's November 2008 opinion is "totally inconsistent with [Dr. Laeupple's treatment] notes/comments" and Dr. Haney's report is also supported by substantial evidence. Indeed, Dr. Laeupple's assessment is riddled with inconsistencies. Specifically, first, Dr. Laeupple noted in June 2008 that Plaintiff can "manage benefits in [ ] her own best interest," (R. 507), but yet stated in that same evaluation that Plaintiff had a serious limitation in her ability to make simple work related decisions, (R. 505) (emphasis added). Second, in the same evaluation, Dr. Laeupple indicated that Plaintiff had "difficulty thinking and concentrating," (R. 504), yet had an "unlimited" or "very good" ability to maintain attention for a two hour segment, (R. 505). Third, Dr. Laeupple opined in the same June 2008 report that Plaintiff was unable to meet competitive standards in dealing with normal work stress, (R. 505), even though he previously relayed to Dr. Haney that Plaintiff was "emotionally stable" and "ready to deal with the stress and complications a major surgery could generate," (R. 492). Fourth, although Dr. Laeupple described Plaintiff as "cooperative," to Dr. Haney, (R. 492), Dr. Laeupple stated nonetheless in his RFC evaluation that Plaintiff could not meet competitive standards in her ability to get along with co-workers and peers without unduly distracting them, (R. 505). Fifth, although Dr. Laeupple stated in June 2008 that Plaintiff suffered from sleep disturbance, (R.

504), there is no indication in Dr. Laeupple's records that Plaintiff reported sleep issues to him, (*see* R. 355-59, 493).  Sixth, Dr. Lauepple assigned Plaintiff GAF scores of 60, 70, and 65, which suggest Plaintiff has some mild, persistent symptoms related to social, work, and school functioning, all of which are inconsistent with Dr. Laeupple's opinion that Plaintiff is unable to meet competitive standards in completing a <u>normal</u> work day or work week without interruptions from psychologically based symptoms.  Lastly, as further proof that the ALJ correctly discredited Dr. Laeupple's report, when asked in the RFC Questionnaire to state  "the earliest date that the above description of limitations applies," Dr. Lauepple answered "unknown."  (R. 507).  This, of course, meant the ALJ simply could not have known what time frame the limitations Dr. Laeupple assigned to Plaintiff applied.

Based on this record, the ALJ did not err in assigning Dr. Laeupple's opinions "little weight," and, in fact, the ALJ's decision to do so was supported by substantial evidence.

B.    *The ALJ did not err in finding that Plaintiff's subjective complaints of pain are not credible.*

Finally, Plaintiff attacks the ALJ's application of the pain standard.  Doc. 8 at 11-15.  Specifically, Plaintiff contends that the ALJ erred because he (1)

improperly relied on Dr. Haney's opinion, (2) did not properly consider her diagnoses of spinal stenosis and spondylosis, and (3) failed to properly consider her activities of daily living.  Doc. 8 at 14-15.  For the reasons stated below, this court disagrees with Plaintiff.

      1.      Dr. Haney's opinion

First, as to Plaintiff's contention that the ALJ improperly relied on Dr. Haney's opinion to discredit Plaintiff's testimony about difficulty focusing and concentrating on tasks, doc. 8 at 14, again, the ALJ found Dr. Laeupple's opinion inconsistent with his treatment notes, and therefore assigned it "little weight."  As a result, the ALJ relied on Dr. Haney's evaluation:

> The undersigned notes significant discrepancies in [Plaintiff's] testimony regarding mental status and activities of daily living. [Plaintiff] testified at the hearing that she had difficulty concentrating and focusing on tasks.  If she tried to sweep the floor she might start doing something else.  She had difficulty taking care of bills, the checking [account] and could not manage because the figures drained her.  Yet, Dr. Haney noted she had no difficulty with any of the calculations, attention, word knowledge and general knowledge and information tasks presented.  He also noted that her memory was intact and she was able to remember three of three objects after [a] five minute delay and to provide considerable recent and remote information.

(R. 20).  While Plaintiff obviously disagrees with the ALJ's decision to reject Plaintiff's testimony that she has trouble managing figures and concentrating on

tasks based on Dr. Haney's assessment, the ALJ's decision is supported by substantial evidence.  Dr. Haney found that Plaintiff "had no difficulty with any of the calculation, attention, word knowledge and general knowledge and information tasks presented.  Memory was also in tact.  She was able to remember three of three objects after a five minute delay and to provide considerable recent and remote information."  (R. 490).  There is simply no evidence in the record that contradicts Dr. Haney and the ALJ, and, significantly, Plaintiff has pointed to none.  The regulations are unequivocal that plaintiff has the burden to prove disability.  *See* 20 C.F.R. § 416.912(a).  To do so, the applicant must provide objective medical evidence to support her claims.  20 C.F.R. § 404.1528(a) and (b).  Plaintiff failed to do so here, and, therefore, has not met her burden of establishing that the ALJ erred when he relied on Dr. Haney's assessment.

      2.      Plaintiff does not meet the pain standard.

      Next, Plaintiff contends that the ALJ erred by rejecting her subjective complaints of back pain even though Drs. Shikh and Laeupple's opinions purportedly substantiated her claims.  Doc. 8 at 12-13.  In other words, Plaintiff contends that she meets the pain standard because she has evidence of an underlying medical condition which is reasonably expected to give rise to her alleged pain.  *See Holt*, 921 F.2d at 1223.

As discussed *supra* at section V.A.1. and 2., the ALJ's decision to give Drs. Shikh and Laeupple's opinions "little weight" is supported by substantial evidence.  Therefore, Plaintiff cannot rely on them to show that she suffers from a condition that is expected to give rise to her alleged pain.  As the ALJ properly found,

> the MRI of the lumbar spine showed no disc protrusion or herniation and no evidence of mechanical nerve root deformity.  The MRI of the cervical spine showed no disc protrusion or herniation, and no evidence of mechanical nerve root deformity with only minimal degenerative disc in the mid to lower cervical spine.  She was noted by her doctors to have only tenderness over these areas.  She was treated conservatively for this.

(R. 20).  The ALJ's findings are supported by substantial evidence.  Although Plaintiff has severe impairments of spondylosis and spinal stenosis, she failed to present any evidence confirming the intensity of her alleged pain or that these conditions are severe enough to cause the pain she alleges.  In fact, Plaintiff's testimony about her activities of daily living (cleans the house, R. 35, mops, *id*., shops, R. 491, cooks, visits family member and friends, and takes care of the home and pets during the day, *id*.), which the ALJ properly considered, belie Plaintiff's contention that her pain is disabling.  Based on this record, which is replete with examples of daily activities that are inconsistent with a finding that Plaintiff's pain is of the severity that she alleges, the ALJ's decision that Plaintiff did not meet the

pain standard is supported by substantial evidence.[10]

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 5th day of March, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[10]Plaintiff argued also that her migraine headaches cause her disabling pain, doc. 8 at 13, but the ALJ did not find that her migraines were severe, (R. 13), and Plaintiff does not challenge that finding in this case.